## STATE EX REL. RICHARD G. TREVARTHEN v. CITY OF EVELETH AND OTHERS.[1]

December 27, 1929.

No. 27,488.

[1]Reported in 228 N. W. 447.

*J. C. McGilvery* and *George H. Spear,* for appellants (respondents below).

*Giblin & Manthey,* for respondent (relator below).

HILTON, J.

Appeal from an order denying motion for a new trial. Mandamus proceeding under the soldiers preference act (G. S. 1923 [1 Mason, 1927] §§ 4368, 4369) to compel the mayor and councilmen of the city of Eveleth to appoint relator, Trevarthen, to the position of superintendent of waterworks of the city of Eveleth.

Appellants are the city of Eveleth, a city of the fourth class operating under a home rule charter, which provides for a modified commission form of government, its mayor and four councilmen, constituting the governing body of the city, and John Rauma. These officials are elected for two-year terms. Each has charge of one of the following departments:

1. Department of public health, sanitation, police and general welfare (in charge of the mayor).

2. Department of accounts and finances.

3. Department of parks, public grounds, buildings and fire protection.

4. Department of waterworks and sewers.

5. Department of streets and alleys.

The (nonelective) chief officials of the city are:

"A city clerk, assessor, treasurer, city attorney, city engineer, chief of police, chief of the fire department, health commissioner, superintendent of waterworks, and street commissioner."

The soldiers preference act as originally appearing in L. 1907, p. 355, c. 263, is:

"An act regulating appointments, employment and removals in public departments and upon public works in the State of Minnesota, and the counties, cities and towns thereof, relating to state, judicial, county, township, city and town officers."

The statute provides that certain honorably discharged soldiers, sailors and marines shall be entitled to preference in appointment, employment and promotion in the positions referred to in the title. It further provides:

"Nothing in this act shall be construed to apply to the position of private secretary or deputy of any official or department or to any person holding a strictly confidential relation to the appointing officer."

It has been held that it does not apply to an officer who is the head of a department. State ex rel. McOsker v. City Council of Minneapolis, 167 Minn. 240, 208 N. W. 1005. Not only does the act protect the ex-serviceman in the matter of appointment, but G. S. 1923 (1 Mason, 1927) § 4369, forbids his removal from the position held by him except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with a right of review by writ of certiorari. In the event of removal the burden of proving incompetency or misconduct rests upon the party alleging it. Any such person whose rights are prejudiced, contrary to the provisions of the act, is entitled to a writ of mandamus to remedy the wrong.

Trevarthen, an honorably discharged ex-serviceman who comes within the provisions of the act, was on February 16, 1926, appointed to the position of superintendent of waterworks to fill a vacancy, by the then city council. The above named mayor and city councilmen were at the November, 1927, election chosen for the respective offices for a two-year term beginning January 3, 1928. There were two applicants for the position of superintendent of waterworks, Trevarthen and appellant Rauma. The latter, who was not an ex-serviceman, was appointed. Trevarthen was not formally removed by the council. Before January 3, 1928, he made an application for reappointment, but not being so reappointed he

afterwards demanded reinstatement. The court found Trevarthen was entitled to a writ of mandamus directing the city council to appoint him to the position and ordered that judgment be entered and a peremptory writ of mandamus be issued as prayed for.

■ The main question involved in this case is whether the position of superintendent of waterworks is one that comes within the provisions of the soldiers preference act. It is not within the exceptions expressly stated in the statute. The court in its findings recited the duties of the superintendent of waterworks and expressly found that Trevarthen, while superintendent of waterworks, had performed his duties in an efficient and satisfactory manner and was thoroughly able to do so, and that these facts were all known to the city council. Further, that the city council did not consider the question as to the qualifications of Trevarthen to hold the position and acted arbitrarily and unfairly in refusing to appoint him. It was the bounden duty of the appointing authorities to make the investigation prescribed by the statute. State ex rel. Meehan v. Empie, 164 Minn. 14, 204 N. W. 572.

The evidence showed, and the court so found, that the superintendent of waterworks had no authority to employ or discharge men or to determine the number to be employed, except only in emergency cases; that he had no supervision or control over the bookkeepers or the clerical force in the office; that he had nothing to do with fixing rates or the collecting of water rentals. As conclusions of law the court found that the superintendent of waterworks was not the head of a department and that such position came within the provisions of the soldiers preference act, and that Trevarthen was entitled to the position and ordered judgment accordingly. We hold that the findings of the court are amply supported by the evidence and must stand.

■ After the court made the order referred to, two motions were made, one to vacate and set aside the findings and to open up the proceedings and to take additional testimony (relative to the ordinances hereinafter referred to); the other motion (in case the first was denied) was for a new trial based upon four grounds, one of which was "newly discovered evidence." These motions were sup-

ported by an affidavit of the city attorney, who tried the case for appellants. The affidavit stated that there were two city ordinances, one relating to the use of water in the city and the other to sewers therein, both of which in part prescribed the duties of the superintendent of waterworks. It was therein stated that through inadvertence the ordinances were not offered in evidence. The court took judicial notice of the charter but not of the ordinances.

There was no sufficient showing made of a reasonable excuse for not producing this evidence. These ordinances were passed prior to the adoption of the home rule charter and were still in force. They were officially published and were contained in a book of ordinances although not indexed therein. A mere inadvertence was not sufficient to require a reopening of the case to receive new evidence, or the granting of a new trial. The court in its memorandum stated that there was no rule of law that allows a municipal corporation any more rights in the trial of an action than an individual litigant. There is some force to appellants' suggestion that in a case where public interest is involved greater liberality should be shown in reopening a case or ordering a new trial on the ground of newly discovered evidence than where the interests of private contending parties only are involved. Whether the result would have been different had the ordinances been received in evidence we do not consider. Perchance the trial court might well have granted the request. However that was a matter resting almost entirely in its sound discretion. We cannot hold that there was an abuse of such discretion, and its action will not be disturbed by us. After a thorough examination of the entire record and briefs and having had the benefit of the oral arguments, we reach the conclusion that the order appealed from should be and it is affirmed.

Affirmed.