## GENERAL MILLS, INC. v. STATE AND ANOTHER.

226 N. W. 2d 296.

February 7, 1975—Nos. 44974, 44975.

*Gary W. Flakne,* County Attorney, and *David E. Culbert* and *Paul R. Jennings,* Assistant County Attorneys, for appellant.

*Johnson & Eastlund* and *Ralph W. Peterson,* for respondent.

*Hayner N. Larson, Hubert V. Forcier,* and *Faegre & Benson,* for North Star Research and Development Institute, amicus curiae, seeking affirmance.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

These appeals are from judgments in district court awarding petitioner interest on a refund of personal property taxes wrongfully levied on exempt property by Hennepin County.

General Mills, Inc., petitioner, had originally paid taxes on certain items of personal property assessed in 1969. Claiming that such property was exempt from taxation, petitioner filed suit in the Hennepin County District Court to claim a refund. In a

related case, General Mills, Inc. v. Commr. of Taxation, 294 Minn. 175, 199 N. W. 2d 636 (1972), involving a 1968 assessment on the same property, this court held that the property was exempt from personal property taxation.

A refund of 1969 taxes was paid, and petitioner moved for an order requiring the county to pay interest for the period the funds were held by the county. The district court ordered interest to be paid to petitioner at the statutory rate of 6 percent from the date petitioner filed its original petition for a refund until the actual date of refund. The county has appealed from the judgments entered pursuant to that order, claiming that no interest should accrue. We affirm.

The issue of a taxpayer's right to interest on the refund of illegally levied personal property taxes is one of first impression in Minnesota.[1] In deciding this question, it is important to consider the procedures established by the legislature for the payment of these taxes. As a condition precedent to contesting the legality of their assessments, taxpayers are now required to pay their personal property taxes in full. Minn. St. 277.011, subd. 3.[2] If a taxpayer has not paid his disputed personal property tax, any judgment against him "shall include any penalties or interest which have then accrued thereon for failure to pay the same." Minn. St. 277.011, subd. 7.[3] If, on the other hand, the petitioning

---

[1] Among the states that have dealt with the question, there is a decided split of authority among a number of alternative viewpoints. See, generally, Annotation, 88 A. L. R. 2d 823; 72 Am. Jur. 2d, State and Local Taxation, § 1068.

[2] Exceptions are available only for hardship cases; such an exception is not directly involved here.

[3] Minn. St. 277.15 provides for the collection of post-judgment interest from a delinquent taxpayer: "When a judgment has heretofore been entered and docketed, or shall hereafter be entered and docketed, for the recovery of taxes * * * the same shall bear interest until paid at the rate of six percent per annum." This provision was enacted almost immediately after this court's holding in State v. New England Furniture & Carpet Co. 107 Minn. 52, 119 N. W. 429 (1909), that no such in-

taxpayer has paid his tax and has sued for a refund, the statute is silent as to the question of interest. Minn. St. 277.011, subd. 9, states only that if "upon final determination the petitioner has paid more than the amount so determined to be due, judgment shall be entered in favor of petitioner for such excess * * *."

With the exception of hardship cases, this statutory scheme insures that the county will have possession and use of a petitioner's tax payments during the period in which the legitimacy of the assessment or levy is being contested. If an assessment or levy is adjudged to have been illegal, and a refund is thereby made, we believe that interests of fairness and equity require that the petitioners receive interest on that refund.[4] We do not perceive the silence of the legislature on the question of interest to be a deliberate legislative choice, for there appears no reason for granting interest with respect to some tax refunds but not to others.[5] This view was presented in an Arizona case, State Tax Comm. v. United Verde Ext. Min. Co. 39 Ariz. 136, 146, 4 P. 2d 395, 398 (1931):

"* * * It is presumed that the sovereign state, in dealing with its citizens, intends to apply the same rules of abstract justice as it applies in actions between citizens. Certainly, it would be admitted to be both law and justice that when A sues B to recover money wrongfully obtained, if he recover he is entitled, not merely

_____

terest was collectible without express statutory authorization. This decision, contrary to the contention of appellant, does not control the disposition of petitioner's claim either as to the right to collect interest or as to the time from which interest accrues. Whatever limitations may be imposed upon the state are not necessarily extended to the taxpayer.

[4] We are here dealing with a case in which the amount of the tax was not the issue in dispute, for the whole of the tax was levied on exempt property; we neither express nor intimate any opinion as to the treatment of a refund when the issue is one of proper valuation of taxable property.

[5] See, for example, Minn. St. 291.18 (providing that refunds of inheritance taxes shall accrue interest); Minn. St. 292.12 (gift tax); Minn. St. 294.09 (gross earnings tax); and Minn. St. 290.50 (income tax).

to the principal sum paid, but also to interest * * *. * * * And in reason and logic, when the state compels one of its citizens under pain of forfeiting all rights of recovery, to pay in advance of suit a sum of money which it is afterwards adjudged was illegally demanded, the same principle of common justice would require that the state, to make the citizen whole, should repay not merely the sum illegally so obtained, but interest from the date the money was paid to it. * * *

"In view of the statute, and the general principles of justice which apply alike to rich and poor, we are of the opinion that the trial court should have awarded interest on the amount of taxes found to have been illegally collected * * *."[6]

Similarly, the South Dakota Supreme Court recognized that when a statute requires a taxpayer to first pay his taxes and then sue for a refund the sovereign thereby consents that, for the purposes of that suit, it should stand as any other suitor. When the government consents to suit, therefore, it ought not to be given an unfair and arbitrary advantage beyond what is given to private litigants, unless necessity or the language of a statute so requires. Chicago, St. P. M. & O. Ry. Co. v. Mundt, 56 S. D. 530, 229 N. W. 394 (1930). See, also, Farmers Loan & Trust Co. v. State of Minnesota, 280 U. S. 204, 212, 50 S. Ct. 98, 100, 74 L. ed. 371, 375, 65 A. L. R. 1000, 1004 (1930), in which it was said that "[t]axation is an intensely practical matter and laws in re-

---

[6] Accord, City of Albertville v. Scott, 268 Ala. 172, 104 So. 2d 921 (1958); Ketchikan Spruce Mills v. Dewey, 17 Alaska 336 (1957); Mullaney v. Hess, 189 F. 2d 417, 13 Alaska 276 (9 Cir. 1951) (applying Alaskan law); State v. Southwest Lbr. Mills, Inc. 80 Ariz. 357, 297 P. 2d 1099 (1956); McMurtry v. State, 111 Conn. 594, 151 A. 252 (1930); Metropolitan Life Ins. Co. v. State, 194 Ind. 657, 144 N. E. 420 (1924); Standard Oil Co. v. State, 283 Mich. 85, 276 N. W. 908 (1937); Jefferson Memorial Park v. West Jefferson Hills School Dist. 397 Pa. 629, 156 A. 2d 861 (1959); Chicago & Northwest Ry. Co. v. Schmidt, 85 S. D. 223, 180 N. W. 2d 233 (1970).

spect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences."

We have repeatedly recognized that interest is not a penalty, but rather is the payment of a reasonable sum for the loss of use of money. McCormack v. Hankscraft Co. 281 Minn. 571, 161 N. W. 2d 523 (1968) ; Potter v. Hartzell Propeller, Inc. 291 Minn. 513, 189 N. W. 2d 499 (1971). Since the legislature has provided a procedure to challenge the legality of taxes, that procedure should provide the taxpayer with an adequate remedy at law. In the absence of a contrary legislative determination, it can hardly be said that the denial of interest provides a taxpayer with an adequate remedy. As Judge Learned Hand wrote in Proctor & Gamble Dist. Co. v. Sherman, 2 F. 2d 165, 166 (S. D. N. Y. 1924) :

"* * * [I]t seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all. Whatever may have been our archaic notions about interest, in modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value. The present use of my money is itself a thing of value, and, if I get no compensation for its loss, my remedy does not altogether right my wrong."

See, also, Nutt v. Ellerbe, 56 F. 2d 1058, 1062 (E. D. S. C. 1932), in which it was held that a "remedy which does not provide for a reasonable amount of interest is not a complete or adequate remedy."

We also recognize that the granting of interest would comport with modern financial practice. Governmental units are extremely aware of the necessity of promptly investing public funds. The payment of a tax obligation therefore generates interest which

may properly serve as a source of funds for the payment of interest on its refund.

Having decided that interest should be paid, we must also determine the period during which it will accrue. As between ordinary persons, interest on money runs from the time the money becomes due and payable until the payment is made. Where money has been paid and received under a mistake of fact, and no fraud or misconduct can be imputed to the party receiving it, money does not become due and payable, and is not considered in default, until a demand for payment has been made. Johnson v. Johnson, 250 Minn. 282, 84 N. W. 2d 249 (1957) ; I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728 (1905).

Accordingly, we hold that interest should not begin to accrue on a tax refund until the protesting taxpayer has made a demand on the taxing unit of government. Within the statutory scheme provided for refunds, then, interest should not start to accumulate until the protesting taxpayer has filed a petition for a personal property tax refund. A petitioning taxpayer may minimize his loss of interest by filing his petition promptly, and the county will therefore not be charged with any delays thus created by the taxpayer.

We hold, therefore, that interest must be paid on a refund of personal property taxes illegally collected, at the statutory rate of 6 percent (Minn. St. 334.01), from the date a petition for refund is filed until the date of actual refund.

Affirmed.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.