## STATE EX REL. EDWIN CAFFREY v. METROPOLITAN AIRPORTS COMMISSION.

246 N. W. 2d 637.

October 15, 1976—No. 46143.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Gordon Shepard, Michael Berens,* and *Mark G. Ohnstad,* for appellant.

*Thomson, Wylde & Nordby* and *John R. Wylde, Jr.,* for respondent.

Heard before Rogosheske, Kelly, and Scott, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Petitioner, Edwin Caffrey, brought this mandamus action pursuant to Minn. St. 1974, § 197.46, of the Veterans' Preference Law, to compel his reinstatement as director of public affairs of appellant, Metropolitan Airports Commission (MAC). The trial court granted the writ ordering MAC to reinstate petitioner and MAC appeals. Since the trial court correctly determined that the Veterans' Preference Law applied, that petitioner was not a head of the department excluded from the protection of the act, and that ample evidence showed MAC did not act in good faith in abolishing the office of public affairs, we affirm.

Petitioner is an honorably discharged veteran. MAC is a public corporation, created in 1943 and charged with the responsibility of developing and operating airports in the Twin Cities metropolitan area. Minn. St. 1974, §§ 360.101 to 360.144.[1] In August 1969, MAC employed petitioner as its director of public affairs. As such, petitioner was responsible for coordination of subjects having commissionwide interest for the staff and direction of commission activities which were of interest and concern to the general public. He was the only full-time employee in the office of public affairs except for his secretary, whom he had no authority to either hire or discharge.

In the spring and summer of 1974, certain members of the

---

[1] Repealed and reenacted in L. 1975, c. 13, §§ 94 to 125 and now found at Minn. St. 473.601 to 473.679.

commission and its staff discussed among themselves their dissatisfaction with the performance of petitioner and with the operation of the public affairs office. On September 3, 1974, the management committee of MAC agreed to recommend that the office of public affairs be abolished, even though the committee did not have before it at the time any specific alternative proposal for meeting public relations needs. At the meeting of the full commission on September 16, 1974, the management committee's recommendation was submitted to the commission along with an opinion of counsel advising that the office of public affairs could be abolished without affording petitioner a hearing if the abolition was in good faith. The commission voted to abolish the office of public affairs. As a consequence, the employment of petitioner and his secretary was terminated, but with severance pay. Although petitioner was allowed to speak to the management committee at the September 3, 1974, meeting, and to the full commission at the September 16, 1974, meeting, petitioner was never given a hearing on charges of incompetency as contemplated by the Veterans' Preference Law.

Petitioner thereafter initiated this mandamus action pursuant to the Veterans' Preference Law, Minn. St. 1974, § 197.46, to compel his reinstatement as director of public affairs or in the alternative to convene a board of three persons to inquire into the cause of his alleged discharge. After hearing, the trial court ordered the writ issued directing MAC to reinstate petitioner. This appeal by MAC followed.

■ As an honorably discharged veteran, petitioner, under the provisions of the Veterans' Preference Law (VPL), may not be discharged by a public employer except for "incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." § 197.46. MAC contends that it was not obligated to provide petitioner such notice and hearing because those provisions of § 197.46 do not apply to employees of MAC. The basis of this contention is that when the legislature created MAC it conferred on the commission through Minn. St. 1974, § 360.106, subd. 5 (now Minn. St. 473.606, subd. 5)—

"* * * the power to appoint engineers and other consultants, attorneys, and such other officers, agents, and employees as it may see fit, who shall perform such duties and receive such compensation as the corporation may determine, *and be removable at the pleasure of the corporation.*" (Italics supplied.)

The initial issue is whether this power of removal "at the pleasure of" MAC supersedes petitioner's rights under VPL. This determination must be made in light of an additional statutory requirement existing at the time MAC was created and contained in VPL, Minn. St. 197.48:

"No provision of any subsequent act relating to any such appointment, employment, promotion, or removal shall be construed as inconsistent herewith or with any provision of sections 197.45 and 197.46 unless and except only so far as expressly provided in such subsequent act that the provisions of these sections shall not be applicable or shall be superseded, modified, amended or repealed. * * *"

We have on two previous occasions considered the effect of a statutory provision that an employee shall serve or be removed at the pleasure of the employer on an employee's veterans preference rights. In State ex rel. Allen v. Rush, 131 Minn. 190, 192, 154 N. W. 947 (1915), we held that a statute enacted in 1909 which "empowered the chief inspector to remove deputy inspectors at his pleasure" superseded a deputy inspector's right to notice and hearing under the 1907 Old Soldier's Law. At that time, however, there was no provision in the 1907 Old Soldier's Law comparable to § 197.48 requiring express repeal or supersession of veterans preference rights. Thus, in the Rush case, we were not called upon to consider the issue of whether a statute authorizing a public employer to remove employees at pleasure is sufficiently specific to be deemed an express repeal or supression of an employee's veterans preference rights.

We again considered the question of veterans preference rights

in State ex rel. Stubben v. Board of County Commrs. 273 Minn. 361, 371, 141 N. W. 2d 499, 506 (1966), where we stated:

"* * * By the enactment of L. 1963, c. 738, even if it could be held that petitioner normally would have protection under the Veterans Preference Act, *that right has been taken away by the provision that he is appointed by and to serve at the pleasure of the county board.*" (Italics supplied.)

Although the statutory language involved in Stubben is similar to the statutory language used in the MAC statute (§ 473.606), we do not consider the Stubben case controlling. In Stubben, we were confronted with a specific statute which created the position of hospital administrator to be "appointed by and serving at the pleasure of the county board." The administrator so appointed asserted that he could not be discharged without notice and hearing showing incompetency, as required by VPL. However, it is clear that the legislature never intended the provisions of VPL to apply to a policy-making position such as a hospital administrator. Indeed, the VPL itself has been construed to exclude the "head of a department" from its coverage. State ex rel. McOsker v. City Council of Minneapolis, 167 Minn. 240, 208 N. W. 1005 (1926); State ex rel. Sprague v. Heise, 243 Minn. 367, 67 N. W. 2d 907 (1954). Thus, we were compelled to hold in Stubben that the legislature never intended, when it created this position of hospital administrator, that the person holding that position would be entitled to the protection of VPL. The fact that the Stubben court also relied in part on the language "serving at the pleasure of the county board" does not justify an out-of-context application of Stubben to deprive *all employees* of MAC of the protection of VPL.

In addition, the Stubben court did not consider the provision of § 197.48 requiring express repeal or supersession of VPL rights. Rather, the general principle that a statute supersedes any inconsistent provisions of prior laws was simply applied. An application of that principle, however, gives no effect to § 197.48 and makes probable abrogation of veterans preference

rights by legislative inadvertence a hazard which, at the very least, § 197.48 was designed to prevent.

In short, we find no statutory or policy justification for such a broad interpretation or application of the Stubben decision.[2] We conclude therefore that the statutory language that MAC employees are "removable at the pleasure of" the commission was not intended to repeal or supersede veterans preference rights granted to MAC employees.[3]

■ Since § 197.46 of VPL has been construed to exclude a "head of a department,"[4] MAC contends that petitioner as such a "head of a department" was afforded no VPL protection.

In State ex rel. McOsker v. City Council of Minneapolis, 167 Minn. 240, 242, 208 N. W. 1005, 1006 (1926), we indicated that heads of departments are public officers—

"* * * vested with discretion in the performance of their duties, not subject to direction from superior authority but on the contrary possessing the necessary authority to appoint clerks and subordinates * * *."

---

[2] The provision in Minn. St. 473.606, subd. 5, that the employees are "removable at the pleasure" of MAC can be viewed as merely a codification of the general principle that a public corporation has the power to terminate employees at its pleasure. Oikari v. Independent School Dist. No. 40, 170 Minn. 301, 212 N. W. 598 (1927). It is well established though that a public corporation's power to terminate employees is limited if the employee is a veteran. In such a case, VPL requires that the employee be afforded a hearing. State ex rel. Castel v. Village of Chisholm, 173 Minn. 485, 217 N. W. 681 (1928).

[3] This conclusion is reinforced by the fact that the legislature specifically stated in § 473.606, subd. 5, that the Veterans' Preference Law was not to apply to the retirement provisions for MAC employees, yet made no specific reference to VPL in connection with the termination of MAC employees.

[4] Minn. St. 1974, § 197.46, provides in part: "* * * Nothing in sections 197.45 and 197.46 shall be construed to apply to the position of private secretary, teacher, superintendent of schools, or one chief deputy of any elected official or head of a department, or to any person holding a strictly confidential relation to the appointing officer."

In State ex rel. Sprague v. Heise, 243 Minn. 367, 373, 67 N. W. 2d 907, 912 (1954), we stated:

"* * * It must have been the intention of the legislature that 'head of a department' meant the head of some division of the city government which was *important enough to have a deputy* and that only such departments could be excluded as a separate department. * * * While cases may arise where a department had only one employee, who thereupon would be the head of the department, we believe that ordinarily, before anyone could be classified as a head of a department, the *department must be sufficiently important to include more than one employee.*" (Italics supplied.)

Finally, in State ex rel. McGinnis v. Police Civil Service Comm. 253 Minn. 62, 75, 91 N. W. 2d 154, 163 (1958), we set forth eight factors—

"* * * to be used in determining what constitutes a department head:

"(1)  Does the alleged department head have charge of the work done by his department?

"(2)  Does his work require technical, professional training?

"(3)  Is he the highest authority at that level of government as to his official duties?

"(4)  Does he supervise all of the work in his department?

"(5)  Does the success of his department depend on his technique?

"(6)  Are the employees in the department under his direction?

"(7)  Are his duties more than merely different from other employees?

"(8)  Does he have power to hire and fire subordinates?"

The undisputed facts in this case show (1) that petitioner did not report directly to the commission but was subject to the authority and supervision of others; (2) that, except for his secretary, petitioner was the only employee in the office of public af-

fairs; and (3) that petitioner had no authority to hire or fire any employees in the office. A consideration of these factors compels the conclusion that the trial court correctly determined that petitioner was not the "head of a department."

■ It is well established that VPL does not prevent a public employer from terminating the employment of a veteran by abolishing the office or position which he held "if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position." State ex rel. Boyd v. Matson, 155 Minn. 137, 141, 193 N. W. 30, 32 (1923). See, State ex rel. Niemi v. Thomas, 223 Minn. 435, 27 N. W. 2d 155 (1947). MAC asserts that abolishing the office of public affairs was an action taken by it in good faith for the legitimate purpose of achieving economy and implementing a new philosophy in public relations, and that the action was not mere subterfuge to oust petitioner since the office has not been recreated.

In State ex rel. Niemi v. Thomas, 223 Minn. 435, 438, 27 N. W. 2d 155, 157, we held that whether a public employer "in good faith abolished the position is a fact question, and if the evidence supports the finding of good faith the finding should be sustained." In this case, the trial court found that "[u]nder the total circumstances of this case, it appears to this court that the action of the MAC in abolishing the office of Public Affairs was not taken in good faith." The narrow issue thus presented is whether the trial court's finding of fact is clearly erroneous. Rule 52.01, Rules of Civil Procedure; Sappa v. Strite-Anderson Mfg. Co. 300 Minn. 116, 221 N. W. 2d 660 (1974).

While MAC was well aware from advice of counsel that its abolition of the office of public affairs had to be in good faith in order to avoid affording petitioner a hearing, it failed to persuade the trial court that it had in fact acted in good faith. There is credible evidence in the record showing that the abolition of the office of public affairs effected no significant economic saving nor any substantial change in the operation of the public af-

fairs program. Moreover, despite apparently widespread dissatisfaction with his performance, petitioner was never informed that his competence was being questioned. After reviewing the entire record, we conclude that, while a finding of lack of good faith is certainly not compelled, neither is such a finding manifestly contrary to the evidence. As we stated in Preferred Risk Mutual Ins. Co. v. Anderson, 277 Minn. 342, 344, 152 N. W. 2d 476, 479 (1967):

"It is well established that a trial court's findings of fact will not be disturbed on appeal, even though we might not agree with them, unless they are clearly erroneous in the sense that they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole."

Since the trial court's finding of fact is not clearly erroneous, we are obliged to affirm it. Absent a good faith abolition of petitioner's office, MAC is not excused from providing him his VPL rights.

■ Finally, MAC argues that petitioner is estopped from challenging the legality of his termination because he accepted severance pay. We find no merit in this argument. It is elementary that there can be no estoppel unless the party sought to be estopped had full knowledge of the facts at the time of the conduct claimed to give rise to the estoppel. Kavalaris v. Cordalis, 219 Minn. 442, 18 N. W. 2d 137 (1945). Here, MAC has made no showing that petitioner knew at the time he accepted severance pay that MAC was not acting in good faith in abolishing the office he held or that MAC would rely to its detriment on petitioner's acceptance of severance pay. Accordingly no adequate basis exists for application of an estoppel.

Affirmed.