Roger E. **HENRY**, Respondent,

v.

**METROPOLITAN WASTE CONTROL COMMISSION**, Relator.

No. C3–86–1463.

Court of Appeals of Minnesota.

March 3, 1987.

Robert C. Bell, Peterson, Bell, Converse & Jensen, St. Paul, for respondent.

Mark D. Thompson, St. Paul, for relator.

Hubert H. Humphrey, III, Minnesota State Atty. Gen., Merwin Peterson, Asst. Atty. Gen., St. Paul, for Dept. of Veterans Affairs.

## OPINION

POPOVICH, Chief Judge.

Relator Metropolitan Waste Control Commission (MWCC) appeals a decision of the Commissioner of Veterans Affairs holding that MWCC employees are subject to Minn.Stat. § 197.46 (1984) (Veterans Preference Act). The statute requires certain public employers to give veterans notice of their discharge rights, including their right to request a hearing. The MWCC discharged an employee, respondent Roger Henry, on August 13, 1984, without the required notice.

The MWCC contends it is not subject to Minn.Stat. § 197.46 and, even if the statute applies, respondent is not entitled to back pay because he did not make a reasonable attempt to mitigate damages. The MWCC also argues that Minn.Stat. § 549.09 (1984) relating to interest does not apply to this proceeding. Respondent, in his notice of review, claims he is entitled to interest from the date of discharge and reinstatement to his position with the MWCC.

## FACTS

The parties stipulated to the facts. Respondent Roger Henry was employed by the MWCC from January 1974 until his discharge on August 13, 1984. Respondent is an honorably discharged veteran of the United States Army. Relator did not notify Henry of his entitlement to a hearing under Minn.Stat. § 197.46 (1984) prior to discharging him. Respondent requested a discharge hearing in April 1985, which was ordered by the Commissioner of Veterans Affairs. On November 6, 1985, an administrative law judge (ALJ) determined that the Minnesota Veterans Preference Act applies to MWCC employees. Respondent's discharge hearing was held in December 1985.

On January 16, 1986, an arbitrator determined that the MWCC properly removed Henry "from public employment for 'misconduct' within the meaning of Minnesota Statutes Section 197.46." The arbitrator concluded Henry was overtly sleeping on the job on August 3, 1984, conduct specifically prohibited by his labor agreement which provides for discharge upon a second violation. This offense was his second within a five-month period. Thus, the arbitrator concluded the discharge was proper.

A contested case hearing was held on March 13, 1986. There it was demonstrated respondent was a MWCC employee for about ten and one-half years. For the last year and one-half prior to his dismissal, Henry also worked as a full-time truck driver for Leaseway Corporation. He worked night hours on weekends at the MWCC and during the day for Leaseway. He is currently employed by Leaseway and earns $11.50 per hour.

At the time of his discharge by the MWCC, respondent earned $13.25 per hour. He testified he has looked for other employment since his discharge and worked for a company called Starcon for about six months, earning approximately $100, but the company has filed for bankruptcy. He said he replied to numerous employment advertisements and made other inquiries looking for work but explained he was un-

able to find another job with working hours compatible with that of his job at Leaseway. Henry also consulted with an occupational psychologist after his discharge from the MWCC job.

The MWCC attempted to present evidence of other available jobs. Thomas Robins, MWCC Human Resources Director, testified about comparable jobs available in the Twin Cities area and supported his testimony with documents from the Department of Economic Security regarding job openings and local newspaper help wanted ads. The MWCC presented no evidence, however, relative to work hours, pay scale, shifts, or number of applicants for these positions.

On April 10, 1986, the ALJ awarded respondent $39,818 in back pay. The recommendation provided for interest under Minn.Stat. § 549.09 (1984), from July 19, 1985 when the order for hearing was served. The ALJ concluded respondent was not entitled to reinstatement to his former position at the MWCC. On August 5, 1986, the Commissioner of Veterans Affairs adopted the ALJ's findings, conclusions and recommendation.

## ISSUES

1. Is the Metropolitan Waste Control Commission subject to the provisions of Minn.Stat. § 197.46?

2. Does substantial evidence support the Commissioner of Veterans Affairs' determination that respondent is entitled to back pay?

3. Is respondent entitled to reinstatement to his previous employment?

4. Should interest be awarded under Minn.Stat. § 549.09?

## ANALYSIS

■ 1. In reviewing an administrative agency decision under the Administrative Procedures Act, an appellate court may affirm, or reverse or modify pursuant to Minn.Stat. § 14.69 (1986). Courts are to review an agency's factual findings under the substantial evidence test. *Peoples*

*Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983); *see Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977) (definition of substantial evidence). A reviewing court is to use this test to evaluate the evidence, consider the entire record, and affirm if the agency has engaged in reasoned decisionmaking. *See Reserve Mining,* 256 N.W.2d at 825.

■ A reviewing court may reverse an agency's decision if the agency findings are arbitrary and capricious. Agency findings are arbitrary and capricious when the determination represents its will and not its judgment. *Markwardt v. State, Water Resources Board,* 254 N.W.2d 371, 374 (Minn. 1977).

■ It is well settled that agency decisions enjoy a presumption of correctness. *Crookston Cattle Co. v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). When statutory interpretation is at issue, however, a reviewing court is not bound by the agency's determination. *Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 114 (Minn.1978). An agency decision is entitled to some deference, "where (1) the statutory language is technical in nature, and (2) the agency's interpretation is one of long-standing application." *Id.* In this case, interpretation and application of the Minnesota Veterans Preference Act is at issue.

■ 2. Minn.Stat. § 197.46 (1984), the Veterans Preference Act, provides that an honorably discharged veteran may not be discharged by a public employer "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." *Id.* The MWCC contends it was not required to provide respondent with such notice and hearing because the provisions of section 197.46 do not apply to MWCC employees, who relator believes are in the state civil service. *See* Minn.Stat. § 197.455 (1984) ("Sections 197.-46 to 197.48 shall not apply to state civil service.").

Minn.Stat. § 197.46 states it applies to persons holding a position with a state political subdivision. Metropolitan commissions, such as the MWCC, are political subdivisions in the state. *See Lifteau v. Metropolitan Sports Facilities Commission,* 270 N.W.2d 749, 756 (Minn.1978).

The MWCC was established under Minn. Stat. § 473.503 (1984) which provides that the MWCC "shall be organized, structured and administered as provided in section 473.141." Minn.Stat. § 473.141, subd. 9(a) (1984) provides for establishment of a personnel code.

The code shall include a job classification plan, procedures for employment and promotion of personnel based on merit, procedures for the demotion, suspension or discharge of employees, procedures for hearing grievances, procedures for salary administration, and such other provisions as the council deems appropriate.

*Id.*

Subdivision 9(b) provides:

All employees of the commission except those expressly designated for the unclassified service, shall serve in the classified service.

*Id.* subd. 9(b). The statute then directs the council to designate which employees are unclassified and what examination procedures shall be used. *Id.*

In describing the employment relationship of commission employees, Minn.Stat. § 473.141, subd. 12 (1984) states:

All persons employed by the chief administrator shall be public employees, and shall have all rights and duties conferred on public employees under sections 179A.01 to 179A.25. The compensation and other conditions of employment of *such employees shall not be governed by any rule applicable to state employees in the classified service nor to any of the provisions of chapter 15A, unless the council so provides.* All employees of the commission shall be

members of the Minnesota state retirement system * * *.

*Id.* (emphasis added).

In his November 6, 1985 order and accompanying memorandum, the ALJ determined that these statutes clearly show the legislature intended the Metropolitan Council to formulate a separate civil service system for commission employees. He noted that:

Although Minn.Stat. § 473.123, subd. 5, · specifically states that "all officers and employees of the metropolitan council shall serve ... in the unclassified service of the state civil service", similar statutory language does not exist for any of the employees of metropolitan commissions, including the Metropolitan Waste Control Commission.

Since Minn.Stat. § 473.141 contains no provision including commission employees in the *state* civil service, the ALJ did not interpret the statute in that manner. Instead he determined the statute refers to a separate civil service system which the Metropolitan Council was permitted to establish.

Relator argues that the language in Minn.Stat. § 473.141 referring to *"the* classified service" refers to the already existing state civil service system. However, in the context of this statute, we believe the word *the* modifying classified service system is referring to the plan the council is authorized to formulate by Minn.Stat. § 473.141, subd. 9(a). In other cases where the legislature intended employees to be covered under the state civil service system, it clearly specified state civil service. *See* Minn.Stat. §§ 352D.02, subd. 1; 473.-123, subd. 5 (1984).

In *State ex rel. Caffrey v. Metropolitan Airports Commission,* 310 Minn. 480, 246 N.W.2d 637 (1976), the court held that the provisions of Minn.Stat. § 197.46 were applicable to employees of the Metropolitan Airports Commission which was also created under Minn.Stat. ch. 473. *Id.* at 485, 246 N.W.2d at 640. Although the airport commission's argument to deny coverage was different from that of the MWCC in

this case, we cannot justify inconsistent application of Minn.Stat. § 197.46 to metropolitan commissions. Therefore, based on the statutory language and the supreme court's holding in *Caffrey,* the Commissioner correctly determined MWCC employees are covered by Minn.Stat. § 197.46.

3. The MWCC contends that even if the MWCC is subject to veteran's preference laws, Henry is not entitled to back pay. It claims the Commissioner's determination that Henry exercised reasonable diligence in mitigating damages is not supported by substantial evidence and is arbitrary and capricious.

 A veteran covered by Minn.Stat. § 197.46 is entitled to compensation until he has been formally discharged as provided by the statute, subject to mitigation of damage principles usually applied to breach of employment contracts. *Johnson v. Village of Cohasset,* 263 Minn. 425, 437, 116 N.W.2d 692, 700 (1962). A veteran is required to "reduce his claim for wages by the amount which, by the exercise of due diligence, he could have earned in employment of a like kind or grade." *Spurck v. Civil Service Board,* 231 Minn. 183, 194, 42 N.W.2d 720, 727 (1950). Further, the employer carries the burden of proof that the employee could have obtained other employment. *Id.* at 194–95, 42 N.W.2d at 727.

 Relator claims that there were jobs comparable to Henry's former MWCC position available in the metropolitan area, which provided opportunity for mitigation.

The ALJ findings adopted by the Commissioner state:

7. From the time he was discharged, Mr. Henry has made approximately 25 inquiries to potential employers concerning a job. However, because Henry was already working week-day, day-time hours for Leaseway, he could not find another job which was compatible with his on-going work schedule. Consequently, Petitioner did not secure any

employment other than his position with Leaseway.

\* \* \* \* \* \*

9. Subsequent to Petitioner's discharge from his employment with the Commission, "comparable" jobs were available in the "marketplace". However, there is no evidence in the record concerning the work hours or shift requirements for these available jobs. The prevailing wage rate during this period of time for the "comparable" jobs was approximately $14 per hour.

Evidence in the record supports these findings. Although the MWCC submitted newspaper ads and Department of Economic Security records concerning positions available and wage rates, they did not show Henry was ever offered a position or that any of these jobs matched his current work schedule. Further, respondent testified that he did look for other jobs.

The Commissioner's findings are supported by substantial evidence and the decision was not arbitrary and capricious. The MWCC did not meet its burden of proof to show that Henry failed to exercise reasonable diligence in obtaining another job.

 4. Respondent claims he is entitled to reinstatement because his hearing took place more than a year after discharge. The ALJ determined respondent is not entitled to reinstatement to his position with the MWCC. The arbitrator who presided at the discharge hearing found that Henry was removed from public employment for "misconduct" within the meaning of Minn.Stat. § 197.46. Further, Minn. Stat. § 197.481, subd. 1 authorizes the Commissioner of Veterans Affairs to determine what relief is justified.

*Johnson v. Village of Cohasset* states that public employees subject to Minn.Stat. § 197.46 cannot be discharged until the statutory requirements have been met. 263 Minn. at 436, 116 N.W.2d at 700. The MWCC did hold a veteran's discharge hearing for respondent, fulfilling its statutory mandate.[1]

1. According to the statute, when the employer has no established hearing procedure, "such

hearing shall be held by a board of three persons appointed as follows: one by the govern-

Respondent also argues that *Young v. City of Duluth,* 386 N.W.2d 732 (Minn. 1986), requires reinstatement. In *Young,* however, an employee's *position* was eliminated and the unit of government (the City of Duluth) refused to give him a hearing. In this case, a hearing was held, the arbitrator found proper grounds for discharge and both the ALJ and Commissioner agreed. There is no basis for reinstating respondent to his previous position.

 5. The parties argue, and we agree, Minn.Stat. § 549.09 does not apply to administrative proceedings. The statute contains no reference to the Administrative Procedures Act (APA), nor does the APA provide for interest awards under Minn. Stat. § 549.09. Further, the statute provides for interest to be calculated by "the judge" in cases of settlement offers. Minn.Stat. § 549.09, subd. 1 (1986).

Henry is nevertheless entitled to interest on his back pay calculated pursuant to Minn.Stat. § 334.01, subd. 1 (1986), which provides:

> The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing.

Although Minn.Stat. § 197.46 is silent on the question of interest, the supreme court has indicated an intent that interest be awarded by governmental units for funds improperly held. In *In Re Defenses & Objections to Personal Property Taxes for the 1969 Assessment,* 303 Minn. 66, 70, 226 N.W.2d 296, 299 (1975), the court stated that interest is not a penalty, but "payment of a reasonable sum for the loss of use of money." *Id.* A "remedy which does not provide for a reasonable amount of interest

is not a complete or adequate remedy." *Id.* (quoting *Nutt v. Ellerbe,* 56 F.2d 1058, 1062 (E.D.S.C.1932)). The court further explained granting interest comports "with modern financial practice." *Id.*

"Where a claim of back wages is not subject to an unliquidated setoff, interest on the sums withheld is properly awarded from the time of the breach." *Spurck v. Civil Service Board,* 231 Minn. at 197, 42 N.W.2d at 728.

We hold Henry is entitled to interest. The ALJ ordered interest from July 19, 1985, the date of service of the notice of hearing. As relator pointed out, this effectively treats the damages as liquidated at the start of the administrative proceedings, even though not all of the back pay damages had accrued at that time.

In a sales contract situation, the supreme court has held that interest as damages "is an amount awarded for default in failing to pay money when due." *Lund v. Larsen,* 222 Minn. 438, 441, 24 N.W.2d 827, 829 (1946). "The damage resulting from delay in making payment is the value of the use of the money * * * measured by statute at the legal rate of interest." *Id.* Based on this interpretation and the court's opinion in *Spurck,* respondent is entitled to back pay with interest calculated from the time each paycheck was due.

## DECISION

Relator Metropolitan Waste Control Commission is subject to Minn.Stat. § 197.-46, the Minnesota Veterans Preference Act. Therefore, respondent Roger Henry's discharge without notification of his rights under the act was improper and he is entitled to back pay and interest under Minn.

---

ment subdivision, one by the veteran, and the third by the two so selected." Minn.Stat. § 197.46 (1984).

In this case, the hearing did not comply with statutory requirements because Henry was never given an opportunity to appear before a three-person panel. His case was heard by a single arbitrator. We find, however, respondent waived his right to the hearing under the statute by agreeing to the single-arbitrator format. Although the record does

not include a precise statement waiving a three-person panel, the arbitrator in her decision stated, "[T]he parties agreed to appoint Charlotte Neigh as the sole Board Member to conduct a hearing and render a decision pursuant to the provisions of the statute."

On appeal, respondent argued that the hearing was invalid because of the 16–month delay between the date of discharge and the hearing. He did not dispute the lack of a three-person panel.

Stat. § 334.01 consistent with this opinion. Henry is not entitled to reinstatement.

Affirmed.